It's amazing. I can't see from here. This is too tall for me. I'm too short for this. I'm going to have to move over a little. Good morning everyone. I have, well, I will say this. I am surprised that neither the appellate nor the appellate addressed the possible legislation that could have arisen given Borshaw in 2024 and all the cases that came after Borshaw in 2025. My staff attorney, I'm going to point her out because she's wonderful. She's sitting in the front row, no ring ranger here. I know she hates me to do this, but she did check the legislation and in January of 2025 there was a proposal to amend the Post-Conviction Act. And three days ago, both the House and the Senate passed an amendment to the Post-Conviction Act that would basically allow the filing of a successive post-conviction petition on a claim of disproportionate sentence for anyone that is under 21. So we don't know if the governor is going to sign it. We don't know if it's going to be retroactive. We don't know any of that. But that said, today when you have your arguments that you did not intend to do, so please also address the issue of prejudice. Because, you know, we wouldn't get to prejudice if there was no cause, but cause is kind of, I'll say the word that I can think of is influx right now, and so I would like to hear, or we would like to hear some arguments on the issue of prejudice. And afterwards, I've talked to my colleagues, and I'm going to give you each 10 days, if you choose to do so, you certainly don't have to, but if you choose to do so, you can give us a supplement to your brief asking or addressing the issue. If this does pass, what is the effect on what our decision should be, and what relief you would be seeking if it does pass. So anything, I don't care if you have anything else, but nothing you haven't covered already, of course, but you have 10 days to do that if you would like to do that. And now, in case you've been called, I'd ask the participants to step up for a moment to identify themselves. That, of course, is not a microphone, it's a recording device, so I wanted to ask each of you to keep your voice up loud and clear, and I feel so odd sitting this way, but I can't see over this thing in the middle. So if you'd identify yourselves for the record, please. Yes, good morning, Your Honor. My name is Katie Oberer, and I represent J.T. Sparkman, the appellate. Okay, and counsel. Good morning, Assistant State's Attorney, Noah Bartz, on behalf of the people. All right. We're going to give each side 15 minutes. Counsel, would you like to reserve some time for us all? Yes, five minutes, please. Okay. And, of course, if we ask a lot of questions, and I don't know if that will happen, we'll certainly extend the time. Thank you very much. And, counsel, whenever you're ready to proceed, you may do so. Good morning, Your Honors, and may it please the Court. Again, my name is Katherine Oberer, and I represent the appellate J.T. Sparkman. There are three circumstances unique to Mr. Sparkman's case, indicating that he is a person who should be able to argue that a life sentence was unconstitutional as applied to him for an offense that occurred when he was 18. One, that life sentence is mandatory. Two, his traumatic upbringing in Cabrini-Green impacted his maturation and moral culpability for this offense. And, three, Mr. Sparkman has since matured. All of these circumstances indicate that he is prejudiced by not being able to pursue this claim, and that's why he's bringing it now in this post-conviction proceeding, and would ask for the opportunity to prove that he's entitled to a new sentencing hearing at a third-stage evidentiary hearing, which is the relief we're asking this Court to order today. The Court already touched a little bit on the legal basis of the claim with its opening remarks, but I did want to clarify that this is an Illinois constitutional claim that Mr. Sparkman is bringing specifically under Article I, Section 11. It's something that's broader than the Eighth Amendment, and it's something that he's arguing particularly to his circumstances that the sentence is unconstitutional as applied to him specifically. Not for all 18-year-olds, just for Mr. Sparkman, due to the three circumstances I mentioned earlier. The legal basis for him doing so is a trio of Illinois Supreme Court cases, People v. Thompson, People v. Harris, and People v. House, which directed people in Mr. Sparkman's position to raise this claim, and he's done so now in a post-conviction petition. Typically, he would need to show cause for that claim to be filed in a successive post-conviction petition. I'm glad to hear that the Court is aware of the new legislation that has since passed. We do believe that it would apply to Mr. Sparkman's circumstances and indicate that because he is a person under the age of 21 at the time that these felonies occurred, and because he is bringing an Illinois constitutional challenge to his sentence, that he, so long as this legislation is passed by being signed by the Governor, would no longer need to prove cause. I do want to apologize for not filing anything with the Court. We were waiting for the Governor's signature, but I'm glad that the Court is aware, and we are happy to respond in 10 days if you'd like me to do that now rather than wait. Would the Court like me to address cause as discussed in the briefings? I'm happy to do so. I don't know. Maybe briefly. Briefly. Yes. I can put it in the context. I am not familiar with this legislation, and I don't know what it says. Okay. It's very brief, and it amends Section 122-1 of the Post-Conviction Hearing Acts to add a new subsection, subsection G. That new subsection will say, as long as the Governor signs it, that people under the age of 21, like Mr. Sparkman, who are bringing an Illinois constitutional challenge to their sentence, like Mr. Sparkman, do not have to show cause as is currently stated in subsection F of the Post-Conviction Hearing Act in order to be given leave to file their petition. It's pretty short. It's a new subsection, subsection G, that will, again, allow people in Mr. Sparkman's position to file the claim without showing cause. If the Court would like to look up the language now, it's currently titled Senate Bill 248, and that is available if you go onto the legislature's website. You can read the text.  He has a different house number, so I've got it. I just got it, so I haven't given it to Mike. Yes, yes, I believe introduced by the Senate since Senate Bill 248 and then passed by the House at the end of the legislature session. And does it have an effective date in it? There's no specific effective date. At this point, and I'm happy to flesh it out in briefing, we do believe it would apply to Mr. Sparkman's position because it's a procedural amendment to a pleading. Typically, procedural amendments, when they don't have a specific effective date, they go into effect as soon as they're signed. And, again, this is a successive post-conviction petition at the second stage. It's at the pleading stage, so as soon as this legislation is signed, we believe it would go into effect. Okay, I'm sorry, and then maybe you can do cause for us as Justice Reyes. Thank you. Yes, so we would, again, we'll file something in 10 days with a bit more detail. If this Court does want to address cause, that trio of Supreme Court cases that I mentioned earlier, Thompson, Harris, and House, as discussed in the briefing, we believe would show cause because that's the legal basis for Mr. Sparkman's specific claim. And none of that was available when he was sentenced in 1995 or when he filed his initial post-conviction petition in 2001, which impeded his ability to bring the claim, which provides cause for him to file it now, that lack of a legal avenue to bring the claim. That also ties into the specific circumstances that were unique to Mr. Sparkman's case. The reason that there was no legal avenue to bring this claim previously is because Mr. Sparkman had a mandatory life sentence. This is something that was specifically stated by the sentencing judge when he was before him in 1995. The judge actually stated to Mr. Sparkman, quote, regardless of what I do, you will have no life as any of us wish it in a free society. By law and as stated by the judge, the only sentencing options available were capital punishment, obviously a life sentence of some sort, or mandatory natural life in prison without parole. The sentencing judge stated that he was not going to impose the death penalty. He decided to do that because my client did not have a substantial criminal background, and he cited the circumstances of the offense where one of the decedents in this case had actually shot my client previously. So the judge decided not to impose the life sentence of a death penalty, and he told Mr. Sparkman that he would therefore, quote, impose the only sentence that is now left, and said, I hereby sentence you to a term of natural life without parole. So in that legal context and as understood and expressed by the judge, there just was no legal avenue for Mr. Sparkman to bring any sort of claim or for the court to impose any sort of sentence that would act upon his rehabilitative potential, his relative immaturity at the time of the offense, and impose a sentence that would rehabilitate him and release him from prison. Is the issue of the, I'll phrase it in a very simple way, the mandatory versus discretionary sentence issue, which is raised many times in many different cases before us, is that issue before the Supreme Court in any case? It is. It's currently pending in People v. McGee, which is cited in both the state's brief and in the reply brief. The court's actively considering right now whether people who have a mandatory life sentence can show cause to file a petition. Obviously, I don't know the impact of the new legislation or not, but that is currently pending in the Supreme Court right now, and that's something they're actively considering. I would also point out that a couple of decisions of this court, which came out after Horshaw, the 2025 decision of People v. Dovey, which is cited in the brief, and the 2025 decision of People v. Hamlin, are making this distinction between mandatory and discretionary life sentences, and saying that if there is, you know, an adequate factual record that people who had a mandatory life sentence, if there's evidence that they are someone who is immature at the time of the offense and can or has since matured, that they can challenge that mandatory life sentence under that framework of the as-applied claims under the Illinois Constitution, as set out by Thompson, Harris, and House, which also involved mandatory life sentences. If there are no... Well, I have a question. Yes. So we know his background and in terms of, and the record is quite replete with what, you know, what this young, well, at the time this young person had to go through. But the state makes an argument that there was no neurological evidence that was presented to determine whether or not, you know, he had the mentality of a 9-year-old. Can you respond to that? That's true. My client's not said to have the mentality of a 9-year-old. What is presented in the record is a sentencing report from 1995 where he's evaluated by three psychologists. And in that report, it indicates that young people, if they have a traumatic upbringing, their maturation can be impacted. It also indicates that my client's conduct in this case was actually a traumatic response, according to the psychologists, because my client had been actually shot by the decedent in this case before. And so when he was confronted with that, you know, sort of heightened emotional state, having not resolved that trauma response, it was something that impacted his behavior in the case. So that is available in the sentencing report. And my client also cited in the amended post-conviction petition additional psychological research that has come out since the time of the sentencing and since the time of the initial post-conviction petition that talks about more that we know, even more that we knew in 1995 about the brain development of young people and how it continues to – people continue to mature and develop beyond the age of 18. Again, my client just turned 18 when this offense occurs, and that new research indicates that development continues into the mid-20s. And that's cited in the amended post-conviction petition. So the coupling of those two things we think are very important and would be sufficient evidence to advance this to the third stage of an evidentiary hearing where the circuit court judge would have the opportunity to evaluate that science, would have the opportunity to evaluate Mr. Sparkman perfectly, personally, excuse me, and make factual findings of whether or not it does apply to him. So that's what we're going to. But what about the issue that there is no neurological evidence in this case? I mean, do we have to infer from, you know, the previous psychological reports, the background, or are we going to have to start looking at whether or not there was neurological evidence presented in these type of cases? So I think Harris currently says it most clearly, the Illinois Supreme Court case. It says you have to show that the new science on maturation and brain development applies to your client. Underlying that science, which is discussed in Harris, talks about how trauma can impact and slow maturation. We definitely have evidence of trauma here, as I mentioned before. He's already been evaluated by three psychologists. And that indication that he has this traumatic upbringing impacting his behavior at the time of the offense, plus the research, which I just mentioned, plus the evidence attached to the petition that my client has since matured, is enough for this stage to show that the science could apply to him, and he should have the opportunity to prove that at a third-stage evidentiary hearing. We are just at the second stage right now, so everything that's in the petition is taken as true. This Court doesn't need to make any factual findings. This Court doesn't need to make any neurological findings. It's just assessing whether what is in the petition currently is sufficient to advance it to the third stage of post-conviction proceedings. And that is what we are asking for. Thank you. Yes. All of that really gets to the prejudice issue that Your Honor was asking to address. It's stated currently in People v. Dobie and People v. Hamlin, and also People v. Green-Hosey, which is said in the brief, that when a person has a mandatory life sentence, and you have this evidence that they are a person who was immature at the time of the offense, that they are a person who can and possibly even has matured as Mr. Sparkman, when there's no opportunity to present that evidence to a judge because the sentencing was mandatory at the time, that's the prejudice. That is what impacts our evolving societal standards. We know now that we wouldn't do that. We wouldn't have this mandatory life sentence where there's no opportunity for that to be considered. It shocks the conscience just having that mandatory nature where these factors of a young person's life cannot be considered to have the option to impose something that will rehabilitate them and release them from prison. I did mention the mandatory nature of the sentence. If it would be helpful to the Court, I have some more details of my client's background. Again, he was raised in Cabrini-Green. His home lacked resources. His home contained violence. He was actually beaten in the home. His neighborhood contained violence. The sentencing judge actually said that. He said that Cabrini-Green was an area where young men kill each other. The sentencing court took into account the fact that my client had personally experienced that violence because he had actually been shot by the decedent in this case before. He also witnessed another person being shot and dying as he went on the way to school in Cabrini-Green. He saw a person who had been shot bleeding and lying in the snow as he walked on the way to school. Yes.  Yes, a shooting of a person. Yes, I guess that was the graphic detail that he saw him lying in the snow bleeding as he went to school. And then, again, that my client was actually personally shot himself, which impacted his behavior in the offense. The psychologist said it was a trauma response. But the Court couldn't consider that to impose anything other than a natural life sentence, which is why we are here today. I do want to point out that there's evidence attached to the petition that Mr. Sparkman has since matured. He explained that after this offense occurred, he was diagnosed with post-traumatic stress disorder, PTSD, because of the fact that he had actually been shot before. He has since received treatment for that offense, and he explained that that treatment has allowed him to identify his triggers so that he does not react to them in the way that he did when he was young. We have evidence of that attached to the petition that Mr. Sparkman went over 10 years in the Department of Corrections without having any disciplinary infraction, evidence that he has matured and changed and can react to those triggers. He's renounced his gang membership, which was something that he had at the time of the offense and does not have now. He spends his time meditating, reading, and praying. This is all evidence that my client may have been young before. They may have been immature before. They may have not been able to process their trauma before, but they can now. So taking all of that as true and knowing that my client's a person who has matured before, we have evidence, again, the psychological reports evaluating Mr. Sparkman, plus the research of the continued brain development that we know now, and the fact that none of that could be considered at the time of the sentencing because the sentence was mandatory. That's the prejudice here, and that's why we believe this claim should be allowed to proceed to the third stage evidentiary hearing so that my client can have the opportunity to just prove that he's entitled to a new sentencing hearing. Can I ask you, there is a recent case out of the First District, People v. Hewitt, that discusses forfeiture of proportionate penalty claims. I know the state's not raising that here, but that issue, do you see that case impacting this case even with the legislation? I would love the opportunity to more fully answer that in the supplemental briefing if you'd like. I would say that that case is also pending in the Supreme Court right now. So it's also not a settled issue, which is, I think that was an initial post-conviction petition. I'd have to double-check. It was. But I would say the fact that it's unsettled, the fact that we have a little bit of a difference of the type of petitions, the fact that we have this new legislation where the legislature is indicating that they want people like Mr. Sparkman to be able to pursue the claims. At this point, I'd suggest that Joby and Hamlin are better options. And I could, again, talk about Hewitt more if you would like.  Thank you. Yes. And if there are any other questions to answer now, I'd be happy to do so. And if not, I'll reserve time for a couple of things. Thank you. I would, though, even though Justice Rothschild said not to address you, I would like both of you to. Of course. Okay. And you would like me to respond in 10 days? I beg your pardon? Is that me to respond in 10 days from today? Both of you. Both of us? Yes. If you'd like, you have 10 days. Okay. Thank you. I would like to do that. Good morning. Good morning. I'm Assistant State's Attorney Noah Montague on behalf of the people in this matter. At the outset of this matter, it is very important to recall that for all the things that can be said positively about anyone who has been through one of these things, one of these cases, and has actually changed in prison, that what determines more than anything the constitutionality of their sentence is, in fact, the crime that they committed. And this defendant, at 18 years old, took a gun from another person, shot twice at an unarmed man. That unarmed man then grabbed a 14-year-old boy. They tripped and fell. The other man was trying to use the boy as a shield. Well, the defendant responded to this by walking over to them and firing 13 to 17 shots, firing again and again until his gun ran out of bullets. And the autopsy showed that both victims had six entry wounds in their bodies. So while there may be some ways of saying, oh, there's a reason, there's cause for considering that maybe there should be leniency or something else, there is no argument on this set of facts that there is prejudice in this case. And that can be seen most clearly in Paragraph 40 of the Illinois Supreme Court's ruling in Hilliard. Because Hilliard is an important case here in many ways because in the most salient way, it's just a procedural flip-flop of the instant case, right? The court said that in order to raise a proportionate penalty clause challenged to your sentence, citing Miller and his progeny, you have to have an initial petition and you have to have a mandatory sentence. Well, in Hilliard, they had an initial petition, but they did not have a mandatory sentence. So this case is the opposite. You don't have an initial petition, but you do have a mandatory sentence. Now, the legislature may change that, and if so, that would be something that would have to change the course of this case. But what you see with prejudice would not, as far as the State is aware, change under Hilliard. Because in Paragraph 40 of Hilliard, what the court said, and you look at that paragraph, the court says that, you know, this defendant chose to fire multiple shots at close range with no demonstrative provocation in an attempt to kill him, and that the imposition of a 40-year sentence was not even arguably cruel, degrading, or so wholly disproportionate to the offense as a shock to the moral sense of the community, and so much so that the claim was frivolous and patently without merit because it had no basis in law. Now, that's important for a number of reasons, but especially because what did the court evaluate prejudice on? The court in that case didn't say, well, how mature was he? How much has he shown on his, you know, how much has his maturity changed since he's been in prison? What was his mental state at the time he committed the offense? The court looked at the prejudice question as, have you met the proportionate penalty standard that has been unchanged since Leon Miller? And the court said, you haven't even come close. And that person was one person shot, and that person did not die. This defendant killed two unarmed people, one of whom was a child, that he shot six times for no reason whatsoever. So there is no prejudice in this case. And the prejudice in this case, the state very much disagrees with the defense that prejudice in this case is somehow shown by a number of factors. When the Illinois Supreme Court has repeatedly stated again and again that the number of factors are, quote, some helpful support, there is no interpretation of the phrase some helpful support that says compelling, that says if you have that helpful support, we have no choice but to find prejudice. The court's ruling was that the number of factors is helpful, but it's not the ultimate thing. And the ultimate question is the same question that was answered in Leon Miller. What is the offense, and is the punishment for the offense shocking to the sense of the community? But doesn't the Constitution specifically say rehabilitative? We have to look at that aspect as well. It does. You're right. We look at the crime and the offensiveness of the crime, but then the Constitution says that we have to look at the other side of the coin, right? That is true, Your Honor. But it also is true that, you know, this court and the Illinois Supreme Court have all repeatedly stated that the rehabilitative potential does not outweigh the severity of the offense and that the severity of the offense is the primary concern. And again, it is not shocking to the moral sense of the community that someone who murdered two unarmed people, one of whom was just a little boy that had nothing to do with anything, is sentenced to life in prison. And that also, it should be noted, has been upheld numerous times under different circumstances from this case, certainly. And, you know, maybe this court or some other court might look at this case and say, well, this is different. But comparing this case and this claim to the prejudice analysis in Hilliard under paragraph 40 does not leave any sign that this defendant could actually establish prejudice. Now, as far as cause goes, at least under the current law in the state of Illinois, there is no chance of establishing cause here. I mean, you look at the cases the defense is citing here, Thompson, Harris, House. Those are the cases that the Illinois Supreme Court has repeatedly, in Dorsey, Clark, Moore, and Hilliard, said you are interpreting those cases wrong. Those cases only said you can bring one of these claims if you have two conditions precedent, the initial petition and the mandatory sentence. And the court, even in Clark and Hilliard, italicized those two words. So to think that under Illinois law somehow there is some opening that says, well, in Hilliard we found that one of the two condition precedent was missing, so we didn't allow you to bring the claim. But if the other one, well, we don't really care about that one, even though we italicized it equally with the other one. The current law in the state of Illinois says that this defendant cannot establish cause. And as this court in all, of course, already found exactly that in Horshaw. And again, you know, the legislation is pending, and we'll see what happens with that. But as far as actual dealing with this claim, even if the cause is removed, this defendant cannot establish prejudice, simply by saying that, well, I have matured and I was immature or that I had trauma or this and that, because ultimately the question is the same question from Leon Milne and the same question from Hilliard. And the court has repeatedly said that murdering two people, two unarmed, innocent people, is not shocking in the moral sense of the community. So for these reasons, and those stated in our brief, we would ask you to affirm the dismissal. Thank you. Thank you. I do just want to again emphasize the legal basis for this claim is the Illinois Constitution, which actually has two components, as Your Honor mentioned. It's a provision titled Limitation on Penalties After Conviction. It says that sentences, every sentence has to be imposed considering two circumstances. One, the seriousness of the offense, and two, with the objective of restoring a person to useful citizenship. So that is what Mr. Sparkman is asking this court to apply here. The prejudice that he experiences, I think, is articulated in Thompson and Harris and House, all individuals where there were multiple people who were shot, all circumstances where there are post-conviction petitions, both successive in Thompson and other post-convictions in Harris and House, where the Illinois Supreme Court said these claims can be allowed to proceed if there's sufficient evidence in the record that they were like a juvenile at the time of the offense, that they were immature, and that they had the ability to be rehabilitated. I would end by emphasizing the three things that I started emphasizing. Joby, Hamlin, and Green-Hosey say that when there's a mandatory life sentence for a young person, when there's no opportunity to consider the fact that they were immature at the time of the offense and that they can mature and possibly have matured since, that that's prejudicial under our evolving standards of decency, that that shocks the current moral sense of the community because the court had no opportunity to consider these things. Again, my client had a mandatory life sentence. He had a traumatic upbringing in Cabrini-Green as recognized by the sentencing court judge that impacted his maturation and moral culpability for the offense. The sentencing judge said that it was one of the decedents who introduced the second person into the circumstance and tried to use him as a shield, so I would point your honors to those findings by the judge, and I would point your honors to the evidence that my client has since matured. He's now able to better handle those triggers. He's now gotten treatment and a proper diagnosis for his mental health disorders, and all of this should be able to be considered by a judge in the circuit court at a third stage evidentiary hearing to see if he's entitled to a new sentencing. I don't think there are any further questions. Thank you, counsel. Thank you for your time. I would say that I hope that we will get something from both sides in 10 days. Normally I would say shortly you'll get a decision on this, but I'm not certain of that. I probably want to wait to see what the governor does first. When is it, 30 days? It goes to him and then he has 60 days to sign it or it becomes law. So we've got like a 90-day window. So hopefully everything will occur quickly and you'll get this quicker.